NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LOUIS SPANO,

        Plaintiff,

        v.

JP MORGAN CHASE BANK, N.A.,

        Defendant.

**Hon. Dennis M. Cavanaugh**

**OPINION**

Civil Action 2:09-cv-04055 (DMC)(JAD)

DENNIS M. CAVANAUGH, U.S.D.J.:

    This matter comes before the Court upon motion by Defendant JP Morgan Chase Bank ("Defendant" or "Chase") for Summary Judgment pursuant to Fed. R. Civ. P.56(c) and cross motion by Plaintiff Louis Spano ("Plaintiff" or "Spano") for Partial Summary Judgment on this issue of underpayment of Plaintiff.  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion for Summary Judgment is **granted** and Plaintiff's motion for Partial Summary Judgment is **denied**.

## I.    BACKGROUND[1]

    Defendant JP Morgan Chase Bank ("Defendant" or "Chase") is a financial institution,

---

[1]These facts are derived from the parties' respective submissions.

licensed in the State of New Jersey where it conducts various financial services, including underwriting, originating, and servicing commercial and residential mortgages. (Pl.'s Compl. ¶¶ 1, 2, ECF No. 1). On or about May 2006, Defendant entered into an employment agreement with Louis Spano ("Plaintiff" or "Spano"), a residential mortgage loan officer. (Pl.'s Compl. ¶ 5).

Prior to his employment with Chase, Plaintiff worked as a residential mortgage Loan Officer for Columbia Federal Savings Mortgage Company ("CFS"), M&T Bank, and Wells Fargo. (Spano Dep., 20-24, June 16, 2010, ECF No. 29-20). During his time with CFS, Plaintiff developed a relationship with Metro Homes, a high rise developer in New Jersey. ("Metro Homes")(Spano Dep. 24). Plaintiff and the lending institution with which he worked were designated as "recommended lenders" for Metro Homes.[2] (Spano Dep. 29-30). Such designation was made by verbal agreement between Plaintiff and Metro Homes. (Spano Dep. 29). As a recommended lender, Plaintiff was provided with an "inside track" into obtaining mortgage business from persons buying Metro Homes' condominiums. (Spano Dep. 30-31). Plaintiff maintained his relationship with Metro Homes when he commenced employment with Wells Fargo. (Spano Dep. 30).

In early 2006, Metro Homes was in the process of seeking to terminate its relationship with Wells Fargo and establish a relationship with a new bank. (Spano Dep. 120). Metro Homes sought a bank who could provide customers with the option to lock in an interest rate at the time of the application, a service that Wells Fargo had been unable to provide. (Spano Dep. 120). At this time, Plaintiff had a conversation with the head of Chase's Building Division, William Hendricks ("Hendricks"), regarding possible employment with Chase. (Spano Dep. 115-116). Plaintiff

---

[2]Plaintiff initially established a relationship with Metro Homes in 1999, while under the employ of CFS Mortgage Company. (Pl. Dep. 24). CFS was subsequently purchased by M&T Bank. (Pl. Dep. 22). Plaintiff thereafter went to work for Wells Fargo Home Mortgage. (Pl. Dep. 24).

consulted with Dean Geibel ("Geibel"), the owner of Metro Homes, and together decided that Plaintiff should go work for Chase. (Spano Dep. 117-123).

Plaintiff thereafter met with Chase representatives to discuss an offer of employment. (Spano Dep. 124). On March 28, 2006 Chase offered Plaintiff employment as a Loan Officer. (Mariani Cert., Ex. D-7, May 11, 2011, ECF No. 27-6). Plaintiff accepted and signed the offer on March 30, 2006. (Mariani Cert., Ex. D-7, May 11, 2011, ECF No. 27-6).

Plaintiff's employment was governed by the terms and conditions of a combination of documents, primarily Chase's Compensation Plan and Policy Statement ("Compensation Plan") and the Terms of Agreement - Retail Loan Officer ("Terms of Agreement"). The Compensation Plan established that Plaintiff's employment as "at-will" and that nothing contained in the Plan was intended to create a contract or employment or alter the at-will nature of Plaintiff's employment. (Mariani Cert., Ex. D-9, May 11, 2011, ECF No. 27-6). The Terms of Agreement originally provided for a $20,000 per month non-cumulative draw and made reference to an additional compensation addendum which was to provide additional incentives for reaching certain volume goals within certain periods of time relative to the Agreement's effective date. (Mariani Cert., Ex. D-10, May 11, 2011, ECF No. 27-6). The original Terms of Agreement was executed by Plaintiff and Chase's Regional Manager, Tony Clintock, on March 14, 2006. (Mariani Cert., Ex. D-10, May 11, 2011, ECF No. 27-6). The original Agreement did not, however, set forth the relative start and end dates over which the Agreement would govern.

On May 3, 2006, a second Terms of Agreement was executed and signed by Plaintiff and Chase. (Mariani Cert., Ex. D-13, May 11, 2011, ECF No. 27-7). The May 2006 agreement provided for a $10,000 per month cumulative draw for twelve-months, and a $10,000 per month non-cumulative draw for twelve months. The May 2006 Agreement provided a start date of May 8, 2006,

on or about the same day Plaintiff began his employment, and an end date of May 8, 2007.  Plaintiff also executed a second document on May 8, 2006, entitled "Additional Compensation," which provided for extra commissions that could be earned by Plaintiff if he achieved certain loan volumes within designated period of time from the effective date of the Agreement. (Mariani Cert., Ex. D-14, May 11, 2011, ECF No. 27-7).  According to Plaintiff, the newly executed agreements were intended to supersede the documents signed in March 2006.  (Spano Dep. 156).  The compensation arrangement between the parties was subsequently modified from time to time during the course of the relationship. (See Spano Dep. 153, (Mariani Cert., Exs. D-15, D-18, D-21, D-23, May 11, 2011, ECF No. 27-6).[3]

On May 16, 2008, Plaintiff was terminated from his employment with Chase.  (Pl.'s Compl. ¶ 14).  Prior to the termination, Defendant had received or been made aware of various complaints about Plaintiff's customer service, including letters sent from attorneys representing clients of Plaintiff, a blog established by the Homeowners Association of one of the developments Plaintiff covered in which several individuals voiced complaints regarding Spano's integrity and customer service, and requests from Metro Homes representatives that Spano be removed from the Metro Homes account.  (Mariani Cert., Ex. D-43, May 11, 2011, ECF No. 27-9). In the Recommendation for Termination submitted by Clintock for Spano's termination, Clintock referenced the aforementioned complaints, as well as other internal issues with co-workers, processors, and his Loan Office Assistant.  Clintock further provided that he met with Spano on two separate occasions to try to rectify the situation, but neither attempt had been availing.

---

[3]The documents referenced are as follows: Ex. D-15, Addendum to Terms of Agreement, executed May 15, 2006, Ex. D-18 "Notice of Change for Commission Employees", effective June 1, 2007 through Dec. 31, 2007, Ex. D-20, revised Aug. 1, 2007, Ex. D-21, "Compensation Plan and Policy Statement, revised Aug. 1, 2007, and Ex. D-23, "Addendum to Terms of Agreement", executed Nov. 14, 2007.

4

On July 23, 2009, Plaintiff filed an Amended Complaint in the Superior Court of New Jersey, Law Division, Bergen County, raising claims of breach of contract, unjust enrichment, wrongful discharge, interference with economic advantage, and trade libel.  (Pl.'s Compl., ECF No. 1). Plaintiff maintains that his termination was without just cause and was rather part of a plan on the part of Chase to alienate Metro Homes from Plaintiff and steal his "book of business" without providing Plaintiff with proper compensation.

On July 24, 2009, Defendant served upon Plaintiff a Demand for a Statement of Damages, to which Plaintiff set forth a demand of $7,120,500.00. (Def. Notice of Removal, ¶¶ 3-5 ECF No. 1).  Defendant subsequently filed a timely Notice of Removal based on diversity of citizenship pursuant to 28 U.S.C. § 1446(b). (Def. Notice of Removal,).  After discovery was conducted, Defendant filed the present motion for summary judgment on May 11, 2011. (Def.'s Mot. Summ. J., May 11, 2011, ECF No. 27).  Plaintiff's time to respond to Defendant's motion for summary judgment was ordered extended on June 8, 2011. (Order, June 8, 2011, ECF No. 28)  Plaintiff then filed a response to Defendant's motions on June 24, 2011, which included a motion for partial summary judgment. (Def.'s Mot. Partial Summ. J. & Answer, June 24, 2011, ECF No. 29)

For the reasons herein expressed, Defendant's motion for summary judgment is **granted** and Plaintiff's Motion for Partial Summary Judgment is **denied**.

## II.   LEGAL STANDARD

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) that the non-moving

party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made, the burden shifts to the non-moving party, who must demonstrate facts that support each element for which he bears the burden, as well as the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, FED. R. CIV. P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The Court will consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Penn. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

III.   **ANALYSIS**

A.   Count One: Breach of Contract

Plaintiff maintains that summary judgment is inappropriate with regard to his breach of contract claim, as there remains disagreement over which of the compensation agreements executed by the parties controls. Plaintiff maintains that the March 2006 agreement is the operative document, as he claims that he was fraudulently induced into executing the May 2006 agreement. In the alternative, Plaintiff argues that the May 2006 agreement was invalid as he did not receive any valuable consideration for executing the new agreement. In the event that the Court finds that the May 2006 agreement is in fact the operative document, Plaintiff seeks to establish that such agreement was also breached by Chase for failure to pay the ten (10) basis performance bonus contained in that agreement.

Defendant maintains that the May 2006 Agreement is the controlling instrument, as it superseded the Agreement executed in March 2006. In addition, Defendant argues that the March 2006 agreement is unenforceable, as it lacked material terms, namely a start and end date. These

terms, according to Defendant, are necessary to determine the total amount of draw which Plaintiff was entitled to be paid. Defendant also counters Plaintiff's argument that the May 2006 Agreement is invalid, and points out that Plaintiff admitted to receiving valuable consideration in exchange for signing the agreement - namely, being hired by Chase. (Spano Dep. 172)

First, we reject Plaintiff's contention that the May 2006 Agreement was contingent. It is well established that "where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and courts must enforce those terms as written." See Impink ex. rel. Baldi v. Reynes, 396 N.J. Super. 553, 560 (App. Div. 2007). Plaintiff seeks to establish that the May 2006 Agreement was intended to be contingent upon Chase entering into a joint venture with Metro Homes. However, Plaintiff does not point to any language in the agreement, nor representation made by Defendant or its representatives to establish that the agreement was in fact intended to be contingent. The fact that the Agreement was made while the parties were seeking to establish a joint venture falls well short of establishing an intent on the part of the parties that the Agreement would become inoperative in the event the joint venture did not come to fruition. To the contrary, the Agreement provides a specific range of dates for its intended application and recites no other conditions on its application. The contract is therefore clear on the terms of application, and will not be found to be found to be contingent.

Next, we reject Plaintiff's argument that Defendant has failed to supply evidence to support the assertion that the May 2006 agreement superseded the March 2006 agreement. While Plaintiff maintains that there is a dearth of evidence to support this proposition beyond "boiler plate" language that appears in the preprinted documents provided to all Chase employees, Plaintiff's argument ignores the basic tenet of the parol evidence rule. The parol evidence rule provides:

> "When two parties have made a contract and have expressed it in a writing to which they
> have both assented as the complete and accurate integration of that contract, evidence,

whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." Filmlife, Inc. v. Mal "Z" Ena, Inc., 251 N.J. Super. 570, 573 (App. Div. 1991).

Plaintiff is wrong in his assertion that some form of "individually crafted language" is required to indicate an intention to supersede the preceding contract.  The May 2006 Agreement was a memorialization of the agreement entered into by the Parties, and Plaintiff himself admitted that the May 2006 Agreement was intended to take the place of the March 2006 Agreement.[4]

Plaintiff seeks to establish that the parol evidence rule should not apply to bar the introduction of evidence to contradict the terms of the May 2006 Agreement.  To do so, Plaintiff alleges that he was fraudulently induced into executing the May 2006 Agreement.

The "fraud exception" to the parol evidence rule allows for the introduction of extrinsic evidence to prove fraud in the inducement.  See Filmlife, Inc., 251 N.J. Super. at 573-74.  In the event of such fraud, parol evidence may be introduced not to alter or vary express terms of a contract, but to avoid the contract itself.  Id.

Plaintiff has failed to allege sufficient facts to raise an issue regarding fraudulent inducement.  To establish fraud, Plaintiff must establish that Defendant made "a material representation of a presently existing or past fact, made with knowledge of its falsity, with the intention that the other party rely on it, and he does so rely to his damage."  Dover Shopping Ctr., Inc. v. Cushman's Sons, Inc., 63 N.J. Super. 384, 391 (App. Div. 1960). While a promise to do something in the future which the promisor never intended to keep may constitute a material misrepresentation, Plaintiff must allege facts to suggest that the statements made were a fraudulent misrepresentation of Defendant's

---

[4]We also note, as Defendant rightly points out, the March 2006 Agreement did not contain all material terms necessary to compute Plaintiff's compensation, and was therefore unenforceable. See Cleef v. P. Serelis Corp., 2005 WL 975682, *3 (Ch. Div. April 8, 2005). (holding a contract which lacks material terms is not enforceable).

state of mind at the time they were made. Id.

Plaintiff asserts that he was fraudulently induced into signing the May 2006 agreement upon the representations made by Defendants regarding a proposed joint venture between Chase and Metro Homes.  However, the statements made by Defendants regarding the joint venture were statements of future intention, and Plaintiff has failed to allege any facts to suggest that the representations regarding the joint venture were a fraudulent misrepresentation of Defendant's state of mind at the time they were made.  The facts of record rather suggest that the parties had a genuine interest in pursuing a joint venture at the time of the Agreement, but that the joint venture failed to materialize.

Plaintiff has therefore failed to successfully challenge the application of the May 2006 Agreement, and we hold that it is the operative instrument.  Plaintiff next alleges that, in the event that the May 2006 Agreement is found to be operative, Defendant breached this Agreement by failing to pay the ten (10) basis performance points contained in that Agreement.  Plaintiff states that the calculation of damages is in excess of $85,953.64, which he maintains are supported by the expert reports and is unrefuted by Defendant.   Plaintiff argues that Chase has failed to introduce evidence by affidavit or sworn testimony that Plaintiff's assertions regarding the May 2006 Agreement are untrue, and that judgement should therefore be granted in his favor in the amount of $85,953.63 on his cross motion.

The Expert Report referenced by Plaintiff purports to calculate the additional compensation negotiated by Spano under the revised agreement, equivalent to 10 basis points for obtaining $40 million or more in locked loan applications with fees collected at month 6 and another 10 basis points for obtaining another $40 million or more in locked loan applications with fees collected at month 12. (Della Torre Expert Report, March 31, 2010, ECF No. 29-17).  This figure included

9

closed loans, home equities, and new construction loans that originated with fees prior December 31, 2007.[5] The document relied upon by Plaintiff's expert in his report, however, does not provide the actual application dates. Plaintiff's expert acknowledged this deficiency, and noted that while he could not confirm the dates of the applications, he believed it "reasonable that Mr. Clintock would have extended the incentive date six months, subject to legal interpretation." Plaintiff's expert notes that Plaintiff represented that the information was obtained from source applications and fee collection documents completed by a Chase administrative assistant, who verified the dates for loans with fees up to September 12, 2007. In addition, Plaintiff's expert stated at his deposition that all of the information in his report regarding Plaintiff's employment with Chase was obtained from Plaintiff and Plaintiff's attorney and he accepted Plaintiff's version of all the relevant events as true. (Della Torre Dep., July 20, 2010, 12-15, 25-26, 45-51, 100-107, ECF No. 29-18). The dates on which the mortgage applications were locked-in are critical to determining whether Plaintiff qualified for additional compensation. Because Plaintiff has failed to establish that there is no genuine issue of material fact that such loans fell within the relevant time period, Plaintiff is not entitled to summary judgment on the issue of damages based on the performance points contained in the revised agreement.

Finally, Plaintiff argues that he is entitled to incentives on loans that closed after he was dismissed, on the grounds that he was not terminated for just cause. Defendants counter that Plaintiff was in fact terminated with cause, and point to various complaints made by clients, attorneys, and representatives of Metro Homes as the grounds for termination.

---

[5]The original end date for locked loan applications was June 30, 2007. However, it is alleged in the expert report that the date was extended because the original date was regarded as an unreasonable time frame by Chase due to the applicants waiting to defer fees to a date closer to the closing dates.

A discharge for just cause is defined as one that is "based on facts that are (1) supported by substantial evidence and (2) are reasonably believed by the employer to be true and also (3) is not for any arbitrary, capricious, or illegal reason." Maietta v. United Parcel Serv., Inc., 749 F.Supp. 1344, 1363 (D.N.J. 1990). With respect to an employment contract providing for termination for "just cause," an employer need only make a good faith determination having credible support that good cause exists. Id.

As previously discussed, Clintock provided several grounds for termination with cause in his Recommendation for Termination, including customer complaints, request for Plaintiff's removal from the Metro Homes account by Metro Homes representatives, and other internal issues. Clintock further references in his Recommendation an attempt on his part to address the complaints and rectify the problems, but that such attempts were unavailing. Plaintiff has provided no evidence to suggest, and specifically admitted in his deposition that he does not have any grounds to dispute, that Clintock did not genuinely believe the complaints or that Plaintiff's continued employment might hurt Chase's mortgage business. Plaintiff rather maintains that the cause of the complaints referenced as support for his termination were in fact due to processing delays, and not due to anything within his own control. Plaintiff has failed, however, to substantiate this claim with any evidence, such as documentation that other Chase representatives subject to the same processing procedures have experienced similar complaints.[6] Further, the referenced complaints addressed his

_____

[6]This Court notes that Plaintiff points to the deposition testimony of his assistant, Erika Donahue, in support of the assertion that the alleged complaints were the result of the changes in the guidelines. (Donahue Dep. July 21, 2011, ECF No. 29-19). However, we note that the referenced deposition testimony came after Donahue noted that she witnessed Plaintiff speaking abruptly with customers, and was a statement of opinion offered in response to attorney questioning:

> Q:      Is it your understanding, based upon your experience, that most of these types of questions and complaints was a result of people questioning why they had to re-issue documents for loans that had already been committed?

demeanor, trustworthiness, and integrity, all elements relating to his customer service, and could therefore not be said to be solely premised upon processing delays.  Defendants have provided a good faith determination having credible support that good cause existed at the time of termination. As Plaintiff has been unable to produce sufficient facts to counter Defendants' just cause, he is therefore not entitled to establish a claim for incentives for loans that closed after his termination.

Plaintiff has therefore failed to set forth facts to establish a claim for breach of contract and summary judgment is appropriate.

B.    Count Two: Unjust Enrichment

Plaintiff argues that when he commenced employment with Chase, he brought with him the "substantial commodity" of the Metro Homes account, which Chase then obtained without compensating Spano for the fair value of the account or the fair value of his services.  Plaintiff seeks to survive summary judgment on his unjust enrichment claim by arguing that there remain issues of material fact regarding which agreement governed his compensation.  Plaintiff further argues that the May 2006 Agreement does not afford him just compensation in light of the failed joint venture and the loss of the Metro Homes account to Chase.

Unjust enrichment is a quasi-contractual form of relief that is imposed by law in the interest of justice to prevent unconscionable benefit or advantage.  W. Caldwell v. Caldwell, 26 N.J. 9, 29 (1958).   A claim for unjust enrichment may not stand where an express contract exists concerning the identical subject matter.  Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226-27 (3d Cir 1983); see also Van Orman v. Am. Ins. Co., 680 F.2d 301, 310 (3d Cir. 1982)(recovery under unjust enrichment may not be had when a valid, unrescinded contract governs

A:    Yes

See Donahue Dep., July 21, 2010, ECF No. 29-19.

the rights of the parties).   Here, the issue of Plaintiff's compensation is governed by a series of

express agreements which set out the rights and responsibilities of the parties.   Plaintiff again argues

that summary judgment is not appropriate for its claim of unjust enrichment on the grounds that there

remains an issue of material fact regarding which compensation agreement is operative.   However,

as we have already determined that the May 2006 Agreement is the valid and operative document,

Plaintiff cannot avail himself of a quasi-contractual remedy.   Summary judgment of Plaintiff's claim

of unjust enrichment is appropriate.

        C.     Count Three: Wrongful Discharge

        Summary judgment is also appropriate for Plaintiff's claim of wrongful discharge.   Plaintiff

claims that he was wrongfully discharged, as his termination was without just cause and rather in

pursuit of a scheme forged by Defendant to capture the Metro Homes account without compensating

Spano for his efforts.   Plaintiff alleges that Chase sought his employment for the sole purpose of

capturing Metro Homes as a client, then unilaterally changed his compensation package, alienated

his client, and subsequently fired him all  in furtherance of this plan.

        Under New Jersey law, at will employees may be fired with or without cause, at the

employers discretion.  Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 397 ( 1994).   An

employment relationship remains terminable at the will of either an employer or employee, unless

the employer acts contrary to a clear mandate of public policy. Bernard v. IMI Sys., Inc., 131 N.J.

91, 105-06 (1993).   Here, Plaintiff has conceded that he was an employee at will, and the

documentation governing his relationship with the Defendant establishes the same.   Further, the

instruments that govern Plaintiff's employment specifically provide that Plaintiff's employment

could be "terminated, with or without cause, and with or without notice, at any time, at the option

of JPMorgan Chase Bank N.A. or Participant."   Even in spite of the fact that Chase was free to

terminate Plaintiff without cause, Defendant has provided sufficient good faith justification for its termination of Plaintiff and Plaintiff has not advanced a theory that such termination was clearly violative of public policy.

As already discussed, Defendant Chase points to several customer and representative complaints regarding Plaintiff's conduct.  While Plaintiff maintains that such complaints were the result of Chase's failures rather than his own, Plaintiff points to no factual support to substantiate this claim.  Plaintiff has also failed to substantiate his claim that a plan was in place to terminate his employment in bad faith, and only vaguely alludes to a secret meeting without Plaintiff attending where the Defendant employees inquired of Metro Homes whether they would stay with Chase if Chase decided to fire Plaintiff.  Such speculative evidence falls well short of establishing the existence of bad faith and cannot stand alone to prove a claim of wrongful discharge.

Plaintiff further alleges that the alleged pretextual discharge by Chase constituted a breach of the covenant of good faith and fair dealing in the employment arrangement with Spano.  However, case law in this district demonstrates that the implied covenant of good faith and fair dealing does not prohibit employers from firing at will employees.  See Scudder v. Media Gen., Inc., 1995 U.S. Dist. LEXIS 11817, at *16 (D.N.J. 1995).   In addition, we again note that Plaintiff supplies no evidence and can point to no facts that support his assertion that Chase did not terminate him for good cause.  Summary judgment is therefore appropriate.

D.      Count Four: Interference with Economic Advantage and Trade Libel

Plaintiff cannot survive summary judgment on his claims of tortious interference and trade libel because Plaintiff has failed to allege facts to establish the requisite elements of each claim. Plaintiff alleges that Chase interfered with his economic advantage by interfering with the Metro Homes account, a commodity of substantial value and great income potential for Spano and any

institution he was associated with.  Spano again alleges that Chase induced his employment, and purposefully altered the terms of his compensation under the guise of a joint venture in order to deny him the economic advantage of the original Agreement and steal his account.  Such alleged interference caused Plaintiff to permanently lose the Metro account, a result that will have a substantial negative economic impact on him.

In order to establish a claim of tortious interference with economic advantage, Plaintiff must prove  (1) that Defendant interfered with some reasonable expectation of economic advantage, (2) the interference was done intentionally and with malice, (3) the interference caused the loss of the prospective gain, and (4) but for the interference, there was a reasonable probability that Plaintiff would have received the anticipated economic benefits.  See Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 751-52(1989).

Here, the facts demonstrate that while Spano did originate the relationship with Metro Homes, the demise in the relationship between the parties was attributable to Plaintiff's own conduct.  As previously referenced, representatives from Metro Homes expressed their wish that Plaintiff no longer be permitted to work on their account, citing several complaints that they had received from Metro Homes customers.  In addition, Plaintiff has failed to substantiate his claim that Chase wrongfully induced his employment under the guise of the joint venture, as Plaintiff has failed to establish that the joint venture was anything other than a genuine intention on the part of the parties at the time Plaintiff negotiated his employment.  Plaintiff has failed to demonstrate intentional and malicious interference, and can therefore not succeed on a claim of toritious interference.

Plaintiff's allegations of the tort of "trade libel" are similarly unavailing.  A claim of libel must establish that "the defendant communicated to a third person a false statement about plaintiff that tended to harm the plaintiff's reputation in the eyes of the community or to cause others to avoid

plaintiff." <u>McLaughlin v. Rosanio, Bailets & Talamo</u>, 331 N.J. Super 303, 312 (2000).  Opinions and name-calling cannot be proved to be true or false, and are therefore not actionable. <u>Id.</u>  Here, Chase merely communicated to Metro Homes criticisms and opinions regarding Plaintiff's interactions with Metro Homes' clients.  Such statements are not actionable defamation, as they are merely expressions of the opinions of Metro Homes clients, and were communicated for the purpose of apprising Metro Homes of complaints relevant to its own clients, not to damage Plaintiff's reputation.

Plaintiff has therefore failed to establish his claims of tortious interference with economic advantage or trade libel.  Accordingly, summary judgment will be granted.

**IV.    <span style="font-variant:small-caps">Conclusion</span>**

For the reasons stated, it is the finding of this Court that Defendant Chase's motion for Summary Judgment is **granted**.  Plaintiff's cross motion for partial summary judgment is **denied.**  An appropriate Order accompanies this Opinion.

   __S/ Dennis M. Cavanaugh_____
   Dennis M. Cavanaugh, U.S.D.J.

Original:   Clerk's Office
cc:         Hon. Mark Falk, U.S.M.J.
           All Counsel of Record
           File